FILED
U.S. DISTRICT COURT

2014 NOV -6  PM 4:06

S.D. OF N.Y.W.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ULBARDO FERNANDEZ, individually and on
behalf of all others similarly situated,

                    Plaintiff,

-against-

RUST-OLEUM CORPORATION,
HOME DEPOT U.S.A., INC., and,
THE HOME DEPOT, INC.,

                    Defendants.
-----------------------------------------------------------------------X

**14 CIV. 8857**

JUDGE BRICCETTI

**VERIFIED COMPLAINT**

**DEMANDS TRIAL BY JURY**

      Plaintiff, Ulbardo Fernandez, by his attorneys, Bloom & Bloom, P.C. and Robert

N. Isseks, complaining of the defendants, individually and on behalf of all others

similarly situated, alleges as follows:

<strong>PARTIES</strong>

    1.  Plaintiff is an individual residing in the County of Dutchess, New York.

    2.  Defendant Rust-Oleum Corporation ("Rust-Oleum") is a corporation organized

and existing under the laws of a foreign state with its principal place of business located

at 11 East Hawthorn Parkway, Vernon Hills, Illinois, 60061.  Rust-Oleum is a leading

producer of protective paints and coatings for home and industry use.

    3.  Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. (both referred to

as "Home Depot") are corporations organized and existing under the laws of a foreign

state with their principal place of business located at 2455 Paces Ferry Road SE, Atlanta,

GA 30339-4024. Home Depot is the world's largest home improvement specialty retailer and the fourth largest retailer in the United States.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the plaintiff resides in the State of New York, the defendants are foreign corporations and the amount in controversy when the class members' claims are included, exceeds $75,000.00, exclusive of interest and costs.

5. This action is properly filed in the United States District Court for the Southern District of New York under 28 U.S.C. §1391 as a substantial part of the errors and omissions for the named plaintiff giving rise to these claims occurred in the Southern District of New York and defendants do business throughout this district.

6. This Court has personal jurisdiction over the defendants pursuant to N.Y.S. C.P.L.R. §§301-302.

**PLAINTIFF'S CLAIMS**

7. At all times relevant to this action, Rust-Oleum designed, manufactured, marketed, distributed and sold in buckets to retail stores throughout the State of New York a product called Restore, a liquid armor resurfacer, advertised, promoted and intended for use on wood and broom-swept concrete surfaces as an alternative to wooden deck and concrete replacement.

8. At all times relevant, the Restore product manufactured and distributed by Rust-

Oleum was materially defective in that it was incapable of adhering to wooden or broom swept concrete surfaces without peeling, cracking or otherwise becoming dislodged after its application.

9.  Prior to Rust-Oleum's sale and distribution of Restore for retail sale in New York, Rust-Oleum affixed a packaging label to each and every bucket of Restore setting forth the product's qualities and intended uses.

10. Upon the retail stores' receipt of the buckets of Restore from Rust-Oleum, the retail stores displayed and made the labeled buckets available for sale to New York's general public and thereupon sold the buckets of Restore to consumers throughout New York State.

11. In September 2013, plaintiff went to Home Depot's retail store located at 3470 North Road, Poughkeepsie, N.Y. to purchase a coating for his home's broom swept concrete garage in order to color its floor and prevent moisture from permeating the concrete.

12. Upon arrival at the store, plaintiff observed a large display of Restore and Restore Rollers (also manufactured and distributed by Rust-Oleum) for sales promotion to Home Depot's customers.

13. Plaintiff read the following from the packaging label on the front of one of the buckets of Restore that were in the display:

RUST-OLEUM
DECK & CONCRETE
RESTORE
LIQUID ARMOR RESURFACER
THE SMART ALTERNATIVE TO DECK & CONCRETE REPLACEMENT

14. Appearing on the packaging label below these words (in English and in Spanish)

were:

WATER BASED, LOW ODOR
REVIVES WOOD & BROOM SWEPT CONCRETE
LASTING MOISTURE PROTECTION
PROVIDES SLIP RESISTANCE
FILLS UP 1/4" CRACKS
ONE PART, READY TO USE AFTER TINTING
LOCKS DOWN WOOD SPLINTERS
IDEAL FOR WOOD & COMPOSITE DECKING,
CONCRETE PATIOS, DOCKS & MORE

15. Also appearing on the label were the words "REPAIRS DECKING" which were

superimposed upon a color picture depicting an aged portion of a lumber deck floor, one

side uncoated and the other side coated and restored with Restore; and the words

"REPAIRS CONCRETE" which were superimposed upon a color picture depicting

concrete, one side cracked and uncoated with Restore and the other coated and restored

with no crack present.

16. The above words and depictions on the packaging label were false and misleading

by virtue of the fact that the Restore product contained in the buckets, as manufactured

and distributed by Rust-Oleum, was materially defective and incapable of adhering to

wooden or broom swept concrete surfaces without peeling, cracking or otherwise

becoming dislodged after its application.

17. The clear message of the representations and depictions on Restore's packaging label was that by following the label's application instructions Restore would repair and revive the consumer's wooden deck or broom-swept concrete, fill the concrete's up to ¼ inch cracks, provide lasting moisture protection and be ideal for concrete patios.

18. Based upon the label's representations and depictions plaintiff decided to purchase from Home Depot at least ten buckets of Restore plus two Restore Rollers for the purpose of recoating the concrete surface of his garage floor.

19. Thereafter, but prior to plaintiff's actually purchasing the product, a Home Depot employee asked plaintiff what color he wanted the Restore to be, plaintiff selected a color and the employee then performed a coloring process on each of plaintiff's buckets.

20. Because the Restore product was not ready for consumer use until completion of the coloring process, and because Home Depot employees performed the coloring process pursuant to Rust-Oleum's direction and as a prerequisite to any retail sale of Restore, Home Depot acted not only on behalf of itself but also as Rust-Oleum's agent when it sold the Restore product to plaintiff and its other Restore purchasers.

21. Plaintiff then purchased the 10 or more buckets of the color treated Restore from Home Depot at the approximate price of $90.00 per bucket for a total of approximately $900.00, and two Rust-Oleum Rollers at a cost of approximately $6.00.

22. Plaintiff thereafter applied the Restore to the concrete surface of his garage and,

thereafter, plaintiff placed a second coat of Restore on the concrete surface for which no person walked on it for at least three days.

23. After what appeared to be (at that time) a perfect application of Restore to the concrete surface of plaintiff's garage, plaintiff decided to apply Restore to the broom swept concrete surface around an exterior portion of his home in order to color the surface and prevent cracking from moisture permeation.

24. Later in September, 2013 plaintiff returned to the same Poughkeepsie Home Depot store and observed the same Restore and Restore Roller display with the same Restore buckets and packaging labels.

25. Again premised upon the representations and instructions on Restore's packaging label, plaintiff decided to purchase six more buckets of Restore, and after a Home Depot employee, again acting as Rust-Oleum's agent, added plaintiff's selected color to the six buckets, plaintiff purchased them for approximately $90.00 per bucket for an approximate total of $540.00, and two more Rust-Oleum Rollers at $6.00.

26. Plaintiff then waited until about the third or fourth full week of September 2013 to apply the Restore so that the exterior concrete was dry from any rain and no rain was forecast for at least 24 hours after the application of the second coat.

27. Plaintiff then applied the Restore and, after plaintiff placed a second coat of Restore on the concrete surface, no person walked on it for at least a week and, upon information and belief, there was no rain for at least 24 hours and the weather was mild

during the day.  It appeared at that time to be a perfect application of Restore to the concrete surface.

28. In late December 2013, plaintiff noticed that the Restore he had applied to the exterior concrete was peeling or dislodging in certain sections.

29. In or about late February 2014 or early March 2014, plaintiff noticed that the Restore he had applied to the concrete of the garage floor was peeling or dislodging in certain sections.

30. In the third week of August 2014, plaintiff returned to the Poughkeepsie Home Depot store to purchase more Restore, believing that another coat was needed on the sections of concrete where it had peeled or dislodged.

31. When plaintiff arrived at the store, he saw buckets of Restore like the ones he had previously purchased on a pallet and requested that a Home Depot employee provide assistance with the coloring process.

32. Plaintiff was then informed by Home Depot employees that the store was not selling the Restore and that the buckets that were on the pallet were being "sent back" because of "many" complaints from customers.

33. Plaintiff then told one of the Home Depot employees that he was unaware of the complaints made by others but that his original concrete was showing in sections where he had applied the Restore in that it was peeling from the surface.  In response the employee said that plaintiff's complaints were the same complaints Home Depot had

previously received from its other customers who had previously purchased and applied Restore and therefore the product was being sent back.

34. Plaintiff's above complaints to the Home Depot employee constituted notice upon the defendants for purposes of plaintiff's breach of warranty claims.

35. Upon information and belief, because of the many similar complaints Home Depot received from its customers who had purchased and applied Restore, like plaintiff's complaints, led Home Depot to decide to take plaintiff's Restore product off all of its shelves in all of its stores in New York State and return the product to Rust-Oleum.

36. Plaintiff then asked the Home Depot employee what could be done concerning plaintiff's situation and the employee told plaintiff that his best course of action was to strip the Restore from the concrete.

37. As a result of the foregoing plaintiff has sustained damages including: (1) the price plaintiff paid for the 16 buckets of Restore and the 4 Rollers, (2) the labor plaintiff expended in applying the Restore and (3) the costs (estimated to be in excess of $7,000) that will be incurred in stripping the Restore from the surfaces where it has been applied and recoating those surfaces with an appropriate coating.

38. In or about the last week of August, 2014, plaintiff became aware that a Facebook page (https://www.facebook.com/pages/Rust-Oleum-Restore-Users/737371316327153) had been created to share consumers' complaints concerning Restore.  Plaintiff also became aware that consumers had been placing videos on YouTube depicting and

explaining the damage that Restore has caused to their decks and concrete. *See, e.g.,*

http://www.youtube.com/watch?v=gwl6upbxRfs, and

http://www.youtube.com/watch?v=Vv3c4-Xyk4k.

39. According to one user appearing on the aforesaid Facebook page, on or about May

22, 2014, Rust-Oleum posted the following on Rust-Oleum's Facebook page in reply to

an inquiry regarding the number of complaints about Restore:

> Thank you for reaching out. When applied correctly, following the temperature
> guidelines, Restore is extremely durable. *We have updated our instructions in*
> *response to the failures homeowners are experiencing.* It's important to ensure
> that the surface was not previously sealed, stained or painted and that the surface
> temperature is above 50 degrees for 3 days and nights with no rain in the forecast.
> When applied correctly, Restore will last up to 10 years.

(Emphasis added.)

40. The packaging label on the Restore buckets that plaintiff had purchased did not

state that "[i]t's important to ensure that the surface was not previously sealed, stained or

painted and that the surface temperature is above 50 degrees for 3 days and nights with

no rain in the forecast" and, upon information and belief, the nighttime temperature

where plaintiff's residence is located dipped below 50 degrees Fahrenheit within the three

days and nights following plaintiff's application of Restore to his home's exterior

concrete surface.

### 1. Defendants' breaches of express warranties

41. Plaintiff repeats the allegations contained in ¶¶1-40.

42. At the time of plaintiff's purchases of Restore as set forth above the

representations, depictions and instructions of the Restore buckets' packaging labels were

affirmations of fact and promises made by defendants to plaintiff relating to the Restore

product that became part of the basis plaintiff's purchases and created express warranties

that the Restore product would conform to the affirmations and promises pursuant to NY

UCC §2-313.

43. By virtue of Restore's material defect at the time of plaintiff's purchases the

defendants breached the express warranties created by Restore's packaging label.

### 2. Defendants' breaches of the implied warranty of merchantability

44. Plaintiff repeats the allegations contained in ¶¶1-43.

45. At the time of plaintiff's purchases of Restore as set forth above the defendants

impliedly warranted the product's merchantability pursuant to NY UCC §2-314.

46. By virtue of Restore's material defect at the time of plaintiff's purchases the

defendants breached the implied warranty of Restore's merchantability.

### 3. Defendants' breaches of the implied warranties of fitness for a particular use

47. Plaintiff repeats the allegations contained in ¶¶1-46.

48. At the time of plaintiff's purchases of Restore as set forth above, and by virtue of

the representations, depictions and instructions on the Restore buckets' packaging labels,

the defendants had reason to know the particular purposes for which Restore was

required by its purchasers and that its purchasers were relying on defendants' skill or

judgment, as expressed in the packaging label's representations, depictions and

instructions in their selection of Restore for such particular purposes and defendants thereby impliedly warranted to plaintiff Restore's fitness for such particular purposes under NY UCC §2-315.

49. By virtue of Restore's material defect at the time of plaintiff's purchases and the false, misleading and incomplete representations, depictions and instructions on the Restore buckets' packaging labels, the defendants breached the implied warranty of Restore's fitness for the particular purposes for which plaintiff required Restore; to wit, restoring and coating wood and concrete surfaces as an alternative to deck and concrete replacement so that, e.g., water permeation would not occur.

### 4.    Breach of Contract/Common Law Warranty

50. Plaintiff repeats the allegations contained in ¶¶1-49.

51. To the extent the representations, depictions and instructions on the Restore buckets' packaging labels are deemed not to be a warranty under New York's Uniform Commercial Code, plaintiffs pleads in the alternative under common law warranty and contract law.

### 5.    Deceptive Acts or Practices against Rust-Oleum pursuant to New York General Business Law § 349 and § 350

52. Plaintiff repeats the allegations contained in ¶¶1-51.

53. The sale and packaging label of Restore was directed towards consumers in order for those consumers to complete their home improvement projects for restoring their wooden decks and concrete patios of their home.

54. Inasmuch as Restore peel, cracks, and/or otherwise becomes dislodged from the wooden or broom swept concrete surface after its application, the packaging label of plaintiff's Restore contains false information that Restore

   a)  Revives Wood & Broom Swept Concrete;

   b)  Provides Lasting Moisture Protection;

   c)  Provides Slip Resistance;

   d)  Fills up ¼" Cracks; and,

   e)  Is Ideal for Wood & Composite Decking, Concrete Patios, Docks & More

## THE PROPOSED CLASSES AND STATEMENT
## OF CLASS ACTION CLAIMS AGAINST DEFENDANTS

55. Plaintiff repeats each and every allegation set forth in ¶¶1-54.

56. Plaintiff seeks certification under Fed. R. Civ. Proc. Rules 23(a) and 23(b)(3) of a class and a sub-class. The proposed class consists of all persons who purchased in a retail store located in the State of New York the same Restore product purchased by plaintiff, and, after its application to wood or broom swept concrete, the product thereafter peeled, cracked or otherwise became dislodged from the wood surface or broom swept concrete to which it was applied.  The sub-class consists of all persons who purchased the Restore product at a Home Depot store.

57. The proposed class seeks declaratory relief and monetary damages including statutory damages plus interest.

58. The exact number of members of the proposed class and sub-classes are presently not available to plaintiff but upon information and belief the members are so numerous that their joinder is clearly impracticable.

59. Common questions of fact and law exist as to all of the members of the proposed class and sub-class and predominate over any questions that might affect only individual members. The common questions of fact presented by the proposed class and sub-class are whether the Restore product purchased by plaintiff and the proposed class members was materially defective by virtue of being incapable of adhering to wooden or broom swept concrete surfaces without peeling, cracking or otherwise becoming dislodged after its application. The common questions of law include whether the defendants: (a) breached expressed warranties under NY UCC §§2-313; (b) breached the implied warranty of merchantability under NY UCC §2-314; (c) breached the implied warranty of fitness for a particular purpose under NY UCC §2-315; (d) breached common law warranty and contract; and, (e) engaged in deceptive practices in violation of New York General Business Law § 349 and § 350.

60. The named plaintiff's claims are typical of the claims of the members of the proposed class and sub-class as they are grounded solely upon the aforementioned theories of liability.

61. Plaintiff is represented by the law firms of Bloom & Bloom, P.C. of New Windsor, New York, and Robert N. Isseks, Esq., of Middletown, New York. These law

firms have the resources, expertise and experience to prosecute this class action and their
attorneys do not have knowledge of any conflicts either among the members of the class
or among the law firms and the members of the class.

62. A class action is superior to other available methods for the fair and efficient
adjudication of the controversy raised in this lawsuit because: (1) the prosecution of
separate actions would be inefficient and wasteful of judicial resources; (2) the issues
raised can be more fairly and efficiently resolved in the context of a single action rather
than piece-meal litigation in the context of separate actions; (3) the resolution of litigation
in a single forum will avoid the danger and resultant confusion of possible inconsistent
determinations; (4) the prosecution of separate actions would create the risk of
inconsistent or varying adjudications with respect to individuals pursuing claims against
the defendants which would establish incompatible standards of conduct; (5) defendants
have acted on grounds applicable to all class members, making final relief on behalf of all
members necessary and appropriate; and (6) questions of law and/or fact common to
members of the class on issues of liability predominate over any questions, such as that of
individual damages, that might affect individual class members.

WHEREFORE, plaintiffs ask this Court to:

A. Certify this action as a class action and name plaintiff as class representative
and plaintiff's counsel as class counsel;

B. Issue an order adjudging and declaring that defendants have breached express warranties under NY UCC §2-313 and are liable to plaintiff and the members of the proposed class and sub-class for such breaches.

C. Issue an order adjudging and declaring that defendants have breached the implied warranty of merchantability under NY UCC §2-314 and are liable to plaintiff and the members of the proposed class and sub-class for such breaches.

D. Issue an order adjudging and declaring that defendants have breached the implied warranty of fitness for a particular use under NY UCC §2-315 and are liable to plaintiff and the members of the proposed class and sub-class for such breaches.

E. Issue an order adjudging and declaring that the defendants breached a common law warranty and/or contract and is liable to the members of the proposed sub-class for such breaches.

F. Issue an order adjudging and declaring that Rust-Oleum engaged in deceptive practices contemplated by New York General Business Law § 349 and § 350.

G. Award plaintiff and the proposed class and sub-class compensatory and statutory damages against the defendants including the prices paid by plaintiff and the class members for the Restore and Rollers, the labor expended by plaintiff and the class members in applying the Restore and the costs to plaintiff and the class members that will be incurred by them in removing the Restore that has been applied and recoating those surfaces with an appropriate coating.

H.  Award plaintiff the costs and disbursements of this action;

I.  Award plaintiff reasonable attorney fees; and

J.  Grant plaintiff and the members of the proposed class and sub-classes such

further relief as to this Court may seem just and proper.

Dated: November 4, 2014
New Windsor, NY

                Yours, etc.

                BLOOM & BLOOM, P.C.
                530 Blooming Grove Turnpike
                P.O. Box 4323
                New Windsor, New York 12553
                (845) 561-6920

                By:_____
                    KEVIN D. BLOOM, ESQ. (KB 5347)

                ROBERT N. ISSEKS, ESQ. (RI 0241)
                6 North Street
                Middletown, New York 10940
                (845) 344-4322

                *Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ULBARDO FERNANDEZ,
individually, and on behalf of all others
similarly situated,

                              Plaintiff,

          -against-                                        **VERIFICATION**

RUST-OLEUM CORPORATION,
HOME DEPOT U.S.A., INC., and,
THE HOME DEPOT, INC.,

                              Defendants.


-----------------------------------------------------------------------X

          ULBARDO FERNANDEZ, being duly sworn, deposes and says:

          That he is the plaintiff herein; that he has read the foregoing first amended

verified complaint and knows the content thereof; that the same is true to his knowledge,

except as to the matters therein stated to be alleged upon information and belief, and as to

those matters he believes them to be true.

                                        _____
                                        ULBARDO FERNANDEZ


Sworn to before me this
____ day of _November_, 2014


_____
Notary Public


                                        KEVIN DANIEL BLOOM
                                        NOTARY PUBLIC-STATE OF NY
                                        Residing in Orange County
                                        #02BL6080266
                                        Commission Expires _September 9_, 20_18_